**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**UNITED STATES OF AMERICA,**

     **v.**                                         **Criminal Case No. 3:15cr49**

**DERRELL V. WALKER,**

          **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Derrell V. Walker's Motion for Compassionate Release Pursuant to Section 603(b) of the First Step Act (the "Motion for Compassionate Release").[1] (ECF No. 118.) The United States responded in opposition. (ECF No. 123.) Mr. Walker has not replied, and the time to do so has expired.

This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons articulated below, the Court will deny without prejudice the Motion for Compassionate Release. (ECF No. 118.)

## I. Background

### A.    Mr. Walker's Underlying Offense

On March 20, 2015, Mr. Walker was charged by criminal information with two counts of possessing and brandishing a firearm in furtherance of the commission of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). (ECF No. 62.) On March 24, 2015, Mr. Walker entered into a written plea agreement with the United States in which he pleaded guilty to Counts

---

[1] The Motion for Compassionate Release incorporates by reference Mr. Walker's Petition for Reduction in Sentence and/or Compassionate Release Pursuant to 18 U.S.C. Section 3582(c)(1)(A)(i) (the "Petition"). (ECF No. 114.)

One and Two. (ECF No. 65, at 1.) Although Mr. Walker moved to withdraw his plea of guilty, (ECF No. 78), this Court ultimately denied that motion, (ECF No. 89), because he had not demonstrated a "fair and just reason" for withdrawal, (ECF No. 88, at 16).

The Plea Agreement and the Statement of Facts describe the conduct of Mr. Walker's underlying offense. (ECF Nos. 65, 66.) Between November 2014 and February 2015, Mr. Walker "knowingly became part of a plan to rob [] cigarette distributor[s]" through armed carjackings. (ECF No. 66 ¶¶ 3–4.) On November 25, 2014, Mr. Walker was informed that J.S., an employee of the Cigarette Outlet, was "loading a large amount of cigarettes into his van for transport back to the Cigarette Outlet store." (ECF No. 66 ¶ 3.) Mr. Walker, who was brandishing a firearm, and two co-conspirators approached J.S. and robbed him at gunpoint. (ECF No. 66 ¶ 3.) Mr. Walker and his co-conspirators obtained "over $50,000 worth of cigarettes and [J.S.'s] vehicle." (ECF No. 66 ¶ 3.)

On February 9, 2015, Mr. Walker was notified that Q.C., an employee of the Tobacco Zone 5, was "purchasing a large amount of cigarettes." (ECF No. 66 ¶ 4.) Mr. Walker and another co-conspirator approached Q.C., "brandished a firearm, and together they robbed Q.C. at gunpoint of approximately $35,000 in Tobacco Zone 5 proceeds." (ECF No. 66 ¶ 4.)

"On November 11, 2014, and January 7, 2015, . . . [Mr.] W[alker] committed substantially similar violent crimes wherein he, and his conspirators, robbed at gunpoint employees of two businesses . . . and through the use of threatened force and violence, took property and money belonging to the businesses against the will of the employees." (ECF No. 66 ¶ 5.)

Prior to sentencing, the probation officer prepared the Presentence Report ("PSR") for Mr. Walker, summarizing his criminal history. (ECF No. 81.) Mr. Walker did not have a base

2

offense level because "Adjustments and Criminal History ... are not applicable for cases in which the conviction is a violation of 18 U.S.C. § 924(c)[,]" and "the guideline sentence for each offense is determined only by the relevant statute." (ECF No. 81, at 23–24.) Section 924(c) requires seven years' imprisonment on Count One and twenty-five years' imprisonment on Count Two, to run concurrently. (ECF No. 81, at 24.) Each count also allowed for up to five years of supervised release. (ECF No. 81, at 24.) Mr. Walker received a two-point addition to his criminal history computation pursuant to U.S.S.G. § 4A1.1(d) (U.S. Sent'g Comm'n 2021) because he committed the underlying offense "while under a criminal justice sentence for Possession of Cocaine with Intent to Distribute."[2] (ECF No. 81 ¶ 58.) This increased Mr. Walker's criminal history category to Category VI (the highest category). (ECF No. 81 ¶ 59.)

On January 27, 2016, the Court sentenced Mr. Walker to the statutorily required 84 months of incarceration on Count One and 300 months of incarceration on Count Two, to run consecutively, with 5 years of concurrent supervised release. (ECF No. 92, at 2–3.)

On April 19, 2021, the Court reduced Mr. Walker's sentence to 188 months in total, as the First Step Act ended "sentence 'stacking[]' by clarifying that the 25-year mandatory minimum applies only when a prior § 924(c) conviction arises from a separate case and already has become final." (ECF No. 113, at 3, 5 (sealed) (quoting *United States v. McCoy*, 981 F.3d

---

[2] Under the November 1, 2023 Sentencing Guideline Amendments, the provisions of U.S.S.G. §4A1.1(d)(2021) transitioned to U.S.S.G. §4A1.1(e)(2023). Under Amendment 821 at §4A1.1.(e), Mr. Walker would receive only one additional criminal history point for committing the offense while under any criminal justice sentence. This provision of Amendment 821 applies retroactively. U.S.S.G. §1.B1.10(d)(2023).

But even were the Court to apply Amendment 821 retroactively (which it would not do given the mandatory minimum at bar) Mr. Walker's total criminal history points would drop from 14 to 13. (ECF No. 81 ¶ 59.) This would not change Mr. Walker's criminal history category: thirteen criminal history points still result in a criminal history category VI. Thus, were Mr. Walker to seek a sentence reduction based on Amendment 821, it would be denied.

271, 275 (4th Cir. 2020)).)  This Court considered that, "[i]f sentenced today, [Mr.] Walker would receive a mandatory minimum 14-year term of imprisonment rather than [the] mandatory minimum 32-year term" he received on January 27, 2016.  (ECF No. 113, at 3 (sealed).)  As of April 17, 2024, Mr. Walker has served one hundred nine months, and seventeen days of his 188-month term of imprisonment, or fifty-eight percent of his sentence.  (*See* ECF No. 119, at 1.)

Mr. Walker is currently housed at FCI Berlin in Berlin, New Hampshire.  *See* Bureau of Prisons, *Fed. Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited April 17, 2024). The Bureau of Prisons ("BOP") lists Mr. Walker's projected release date as August 17, 2028.  *Id.*

**B.     Mr. Walker's Motion for Compassionate Release**

On May 31, 2022, Mr. Walker filed a *pro se* Petition for Reduction in Sentence and/or Compassionate Release.  (ECF No. 114.)  After Counsel was appointed, Mr. Walker filed the instant Motion for Compassionate Release on June 23, 2022, which incorporates by reference Mr. Walker's *pro se* Petition.  (ECF No. 118.)  Mr. Walker asks not for immediate release, but rather for a sentence reduction to 120 months, "so that he may enter the [BOP's] Residential Drug and Alcohol Program ('RDAP') prior to his release."  (ECF No. 118, at 1.)

**1.     COVID-19**

In the Petition, Mr. Walker discusses the COVID-19 pandemic and the BOP's response, including a general lack of cleaning supplies and officers "walk[ing] around inmates with no mask."  (ECF No. 114, at 6.)  In both the Petition and the Motion, Mr. Walker describes how his health conditions make him particularly susceptible to complications from COVID-19.  (ECF No. 114, at 6; ECF No. 118, at 2–7.)  Mr. Walker, now forty-five years old, contends he is

particularly susceptible to COVID-19 because of his age, chronic obesity, and high blood pressure.[3]  (ECF No. 114, at 6.)

### 2.     18 U.S.C. §924(c) Stacking and Rehabilitation

In addition to his contentions regarding his health, Mr. Walker's Petition asserts that he "received a mandatory-minimum consecutive 25-year term for a second § 924(c) conviction, in part." (ECF No. 114, at 9.) Mr. Walker further states that his "[§] 924(c) convictions [were] obtained in a single prosecution, whereas, the 25-year mandatory minimum no longer applies to single prosecution." (ECF No. 114, at 9). Mr. Walker argues that the stacking under § 924(c) creates an "extraordinary and compelling reason[]" to reduce his sentence. (ECF No. 114, at 9.)

Finally, Mr. Walker argues that his rehabilitative efforts support a reduction in his sentence. Specifically, Mr. Walker states his "Psychology Department File . . . will exemplify a tremendous degree of progress when compared to [his] behavior and/or attitude towards a life of crime." (ECF No. 114, at 10.) Furthermore, Mr. Walker cites his completion in drug education, anger management, and serve safe manager classes, alongside completion of the Challenge Program and voluntary drug treatment as further support of his rehabilitative efforts. (ECF No. 114, at 10–11.)

### 3.     Response from the United States

On September 23, 2022, the United States filed a Response in Opposition. (ECF No. 123.) The United States objects to Mr. Walker's requested sentence reduction. (ECF No. 123, at 1.) The United States argues that Mr. Walker "does not have a medical condition that qualifies

---

[3] Mr. Walker's Petition identifies age, chronic obesity, and high blood pressure as creating susceptibility to contracting COVID. (ECF No. 114, at 6.) Mr. Walker's Motion "expand[s] upon two health conditions." (ECF No. 118, at 1.) The Motion characterizes his high blood pressure as hypertension and his obesity as only "likely," not chronic. (ECF No. 118, at 2, 4.)

as an 'extraordinary and compelling' reason for release, has been fully vaccinated," has contracted and recovered from COVID-19 without complication, and that "the sentencing factors in 18 U.S.C. § 3553(a)[4] do not support release."  (ECF No. 123, at 1, 9.)  The United States

---

[4] Section 3553(a) of Title 18 of the United States Code states:

The [C]ourt, in determining the particular sentence to be imposed, shall consider—

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
>
> (5) any pertinent policy statement—
>
>> (A) issued by the Sentencing Commission . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

6

identified that no particularized risk existed FCI Berlin.  (ECF No. 123, at 6.)  Neither party has

supplemented the record to indicate any material change in circumstances that this Court

should consider.

## II.  Compassionate Release Under the First Step Act of 2018

### A.  Legal Standard

Prior to the First Step Act of 2018, an individual could not petition the district court for

relief on compassionate release grounds without approval from the BOP.  *See Coleman v. United*

*States*, 465 F. Supp. 3d 543, 546 (E.D. Va. 2020).  In 2018, Congress enacted the First Step Act

to provide incarcerated individuals the opportunity to directly petition the courts for

compassionate release under 18 U.S.C. § 3582(c)(1)(A).[5]  First Step Act of 2018, Pub. L. No.

-------

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

[5] Section 3582(c) states, in pertinent part:

The court may not modify a term of imprisonment once it has been imposed
except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of
Prisons, or upon motion of the defendant after the defendant has
fully exhausted all administrative rights to appeal a failure of the
Bureau of Prisons to bring a motion on defendant's behalf or the
lapse of 30 days from the receipt of such a request by the warden
of the defendant's facility, whichever is earlier, may reduce the
term of imprisonment (and may impose a term of probation or
supervised release with or without conditions that does not exceed
the unserved portion of the original term of imprisonment), after
considering the factors set forth in section 3553(a) to the extent
that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a
reduction . . .

7

115–391, 115th Cong. (2018).  Under the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences.  *Coleman*, 465 F. Supp. 3d at 546.

Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct.  *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)).  However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification.  *See* 28 U.S.C. § 994(t).[6]

### B.   Exhaustion of Administrative Remedies

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a

---

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

[6] 28 U.S.C. § 994(t) states:

The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.  *Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.*

28 U.S.C. § 994(t) (emphasis added).

motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."  18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time."). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020); *see also United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (same).

The United States correctly concedes that Mr. Walker has exhausted his administrative remedies by "submitt[ing] a request to the warden at FCI Berlin for compassionate release on July 16, 2021, and on August 20, 2022, that request was denied by the warden, Robert Hazlewood."  (ECF No. 123, at 3.)

## C.  Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction[.]"  18 U.S.C. § 3582(c)(1)(A)(i).  Congress did not define "extraordinary and compelling reasons" in the statute.  The United States Sentencing Commission does, however, further define "extraordinary and compelling reasons."  U.S.S.G. § 1B1.13(b); *see United States v. Burrell*, No. 3:04-CR-364 (JAG), 2023 WL 7726404, at *4 n.7 (E.D. Va. Nov. 15, 2023).  The Sentencing Commission

> addressed the issue in a policy statement, United States Sentencing Guideline § 1B1.13, which provided the BOP with several categories of extraordinary and compelling reasons to consider.  For years following the passage of the First Step

9

Act, the Sentencing Commission failed to update § 1B1.13 to account for motions filed by defendants, meaning the policy did not bind the courts when presented with a defendant's motion for compassionate release. A court therefore remained empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.

*Burrell*, 2023 WL 7726404, at *4, n. 7 (cleaned up) (citing *McCoy*, 981 F.3d at 276, 281–

82, 284).

The 2021 Sentencing Guidelines enumerated four bases on which to evaluate a motion

for compassionate release. U.S.S.G. § 1B1.13 cmt. n.1(A)–(D) (U.S. Sent'g Comm'n 2021)

identified four bases to establish extraordinary and compelling reasons for release:

(A) medical conditions;
(B) age;
(C) family circumstances; and,
(D) other reasons.

U.S.S.G. § 1B1.13 cmt., n.1(A)–(D).

In 2023, the United States Sentencing Commission published new sentencing guidelines

amendments (the "2023 Sentencing Guidelines Amendments" or "2023 Amendments").

Pursuant to the 2023 Amendments, the Sentencing Guidelines now identify six instructive

categories of extraordinary and compelling reasons that may allow for a sentence reduction.[7]

These are:

(1) certain medical circumstances of the defendant, such as terminal illness or the inability to receive specialized medical care while incarcerated, [U.S.S.G.] § 1B1.13(b)(1)[8];

(2) the defendant's age, *id.* § 1B1.13(b)(2)[9];

---

[7] *See* Appendix A, U.S.S.G § 1B1.13(b) (2023).

[8] *See* App. A, at **U.S.S.G. § 1B1.13(b)(1);** *cf.* Appendix B, **U.S.S.G. § 1B1.13 cmt. n.1(A).**

[9] *See* App. A, at **U.S.S.G § 1B1.13(b)(2);** *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(B).**

(3) the defendant's family circumstances, *id.* § 1B1.13(b)(3)[10];

(4) the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, *id.* § 1B1.13(b)(4)[11];

(5)'any other circumstances or combination of circumstances . . . similar in gravity to' the circumstances 'described in paragraphs (1) through (4).' *Id.* § 1B1.13(b)(5)[12]· and,

(6) the defendant received an 'unusually long sentence,' *id.* § 1B1.13(b)(6).[13].

*United States v. Tucker*, 2023 WL 8357340, at *5 (D. Md. Dec. 1, 2023).

The United States Court of Appeals for the Fourth Circuit explained—even before the 2023 Sentencing Guidelines Amendments—that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. The Fourth Circuit further illuminated that:

> [w]hen Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to introduce compassion as a factor in assessing ongoing terms of imprisonment, authorizing a district court to give greater weight to an inmate's personal circumstances—when sufficiently extraordinary and compelling—than to society's interests in the defendant's continued incarceration and the finality of judgments.

*United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022).

---

[10] *See* App. A, at **U.S.S.G. § 1B1.13(b)(3)**; *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(C).**

[11] *See* App. A, at **U.S.S.G. § 1B1.13(b)(4).**

[12] *See* App. A, at **U.S.S.G. § 1B1.13(b)(5)**; *cf.* App. B., at **U.S.S.G. § 1B1.13 cmt. n.1(D).**

[13] *See* App. A, at **U.S.S.G. § 1B1.13(b)(6).**

Since *McCoy* and *Hargrove*, the 2023 Amendments have taken effect.  These Amendments clarify the Commission's view on what could constitute "extraordinary and compelling reasons" for a sentence reduction under the First Step Act.[14]  The *McCoy* court has noted, however, that the Guidelines, while helpful, are merely advisory and do not bind the Court.  "[D]istrict courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'"  *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

The United States Supreme Court has determined that "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence[.]" *Concepcion v. United States*, 597 U.S. 481, 500 (2022).  District courts within the Fourth Circuit have decided that sentencing disparities resulting from intervening changes in the Fourth Circuit's interpretation of the sentencing guidelines can constitute an "extraordinary and compelling reason" for compassionate release.[15]  *See, e.g., United States v. Redd*, 444 F. Supp.

---

[14] As other courts have observed,

> [t]he Fourth Circuit has yet to address the impact the amended Sentencing Guidelines have on *McCoy* and similar rulings or precisely how courts should apply the amended policy statement in motions for compassionate release, particularly motions filed before November 1, 2023.  The Court need not reach this question, however, because [Mr. Walker] has failed to establish an extraordinary and compelling reason to reduce his sentence applying both the case law before November 1, 2023, and the amended Sentencing Guidelines.

*Burrell*, 2023 WL 7726404, at *4 n.7.

[15] The 2023 Sentencing Guideline Amendments added subsection (c) to U.S.S.G. § 1B1.13, which provides that a change in the law, or in non-retroactive Guidelines amendments, ordinarily shall not be considered when determining whether extraordinary and compelling reasons exist.  However, subsection (c) includes an important caveat: "if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has

3d 717, 723–724 (E.D. Va. 2020) (finding that the "gross disparity between the sentence Mr.

Redd received and the sentence he would have received after the First Step Act . . . constitute[s]

[an] extraordinary and compelling reason[] that warrant[s] a reduction to Mr. Redd's sentence");

*see also United States v. Fennell*, 570 F. Supp. 3d 357, 363 (W.D. Va. 2021) (finding that "the

significant disparity between Fennell's current sentence and the [ten years reduced] sentence he

would face today for the same offense provides an extraordinary and compelling basis for a

sentence reduction under § 3582(c)(1)(A)"); *United States v. Arey*, 461 F. Supp. 3d 343, 350

(W.D. Va. 2020) ("The fact that if [the defendant] were sentenced today for the same conduct he

would likely receive a [forty year] lower sentence than the one he is currently serving constitutes

an 'extraordinary and compelling' reason justifying potential sentence reduction under

§ 3582(c)(1)(A)").

There is a plethora of unpublished cases that follow this same reasoning.  *See, e.g.,*

*United States v. Banks*, 2022 WL 220638, at *2–3, *6 (W.D. Va. Jan. 25, 2022) (88-month

difference between the low end of defendant's career offender sentencing range and the low end

of the non-career offender sentencing range was "such [a] gross disparit[y] in sentencing" that it

constituted an extraordinary and compelling circumstance); *United States v. Williams*, No. 1:14-

CR-428 (TSE), 2021 WL 5827327, at *6–7 (E.D. Va. Dec. 8, 2021) (difference of "more than

three years longer than the high end of the guidelines that would have applied under *Norman*"[16]

warranted a reduction in defendant's sentence from 168 months to 125 months); *United States v.*

---

not been made retroactive) may be considered for purposes of determining the extent of any such
reduction." U.S.S.G. § 1B1.13(c) (2023).

[16] *United States v. Norman*, 935 F.3d. 232 (4th Cir. 2019) (finding that defendant was
subject to a lower guideline range because a drug conspiracy conviction did not constitute a
"controlled substance offense" because the statute of conviction "criminalize[d] a broader range
of conduct than that covered by generic conspiracy").

*Huggins*, 2021 WL 3025459, at *4 (W.D. Va. July 16, 2021) (sentencing disparity of more than five years was a "gross disparity" and an "extraordinary and compelling" reason warranting a sentence reduction); *but see United States v. Hinton*, No. 2:15-CR-80 (MSD), 2022 WL 988372, at *5 (E.D. Va. Mar. 31, 2022) (three to six year sentencing disparity "not so drastic that it constitutes an extraordinary and compelling reason for relief").  When considering the 2018 congressional modifications to stacked penalties for § 924(c) convictions that are relevant here, the Fourth Circuit has specifically held that "courts legitimately may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." *McCoy*, 981 F.3d at 275, 285–86 (quoting *Redd*, 444 F. Supp. 3d at 723).

### 1.   **Medical Circumstances of the Defendant**

The 2023 Sentencing Guidelines Amendments explain in greater detail what a court should consider when considering medical circumstances as a basis for an extraordinary and compelling reason to grant compassionate release.

The relevant section of U.S.S.G. § 1B1.13(b) reads:

(1) MEDICAL CIRCUMSTANCES OF THE DEFENDANT.—
          *         *         *
    (D) The defendant presents the following circumstances—

                (i) the defendant is housed at a correctional facility affected
                or at imminent risk of being affected by (I) an ongoing
                outbreak of infectious disease, or (II) an ongoing public
                health emergency declared by the appropriate federal, state,
                or local authority;

                (ii) due to personal health risk factors and custodial status,
                the defendant is at increased risk of suffering severe
                medical complications or death as a result of exposure to
                the ongoing outbreak of infectious disease or the ongoing
                public health emergency described in clause (i); and

14

(iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(D).

As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his [or her] prison facility." *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (collecting cases).  However, "the mere existence of COVID-19 in society . . . cannot independently justify compassionate release."  *Id.* (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (internal quotation marks omitted)).

### 2. Unusually Long Sentence

The 2023 Sentencing Guidelines Amendments explain in greater detail what a court should consider when considering unusually long sentences as a basis for an extraordinary and compelling reason to grant compassionate release.

The relevant section of U.S.S.G. § 1B1.13(b) reads:

> (6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

### D.   Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the Section 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A); *Martin*, 916 F.3d at 397–98; *McDonald*, 986 F.3d at 412. The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed . . . to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect from the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

### IV. Analysis

After due consideration, the Court will deny the Motion for Compassionate Release. (ECF No. 118.) Although the United States concedes that Mr. Walker has exhausted his administrative remedies, (ECF No. 123, at 3), the Court will deny the Motion for Compassionate Release upon finding that Mr. Walker does not offer any "extraordinary and compelling reasons" to support his request for release. 18 U.S.C. § 3582(c)(1)(A)(i).

### A.   Mr. Walker's Medical Conditions Do Not Constitute "Extraordinary and Compelling" Reasons for a Reduction in Sentence

Mr. Walker asserts that his particularly vulnerability to the coronavirus due to his own medical conditions and the conditions at FCI Berlin, his place of confinement, create an extraordinary and compelling reason warranting a modification of his sentence. (ECF No. 114, at 6–7, 12.) As previously noted, a risk of being infected by the coronavirus does not itself

constitute an extraordinary and compelling reason for granting compassionate release. *Feiling*, 453 F. Supp. 3d at 841. Courts have found extraordinary and compelling reasons for compassionate release "when an inmate shows both a particularized susceptibility to the disease *and* a particularized risk of contracting the disease at his [or her] prison facility." *Feiling*, 453 F. Supp. 3d at 841 (emphasis added).

Here, Mr. Walker asserts his age, obesity, and undiagnosed hypertension make him particularly susceptible to complications should he contract the coronavirus. (ECF No. 114, at 6; ECF No. 118, at 2–4.) The CDC has recognized age as a risk factor should someone contract COVID-19, but notes a higher risk factor for individuals aged 50 or older. *See People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 17, 2024). Mr. Walker is only forty-five years old, meaning that his age does not contribute to his particular susceptibility to COVID-19. Additionally, age alone "does not create a materially elevated risk of hospitalization or death due to COVID-19." *United States v. Lumpkin*, No. 2:12cr192 (MSD), 2020 WL 7123109, at *2 (E.D. Va. Dec 4, 2020) (finding that a forty-three-year-old defendant was not particularly susceptible to COVID-19.)

Furthermore, while Mr. Walker claims to suffer from obesity and either high blood pressure or hypertension, his medical records do not support this. (ECF No. 114, at 6; ECF No. 118, at 1.) Mr. Walker states he is "likely" obese, as he has gained weight since his arrest, but concedes that "his body mass index (BMI) is 29." (ECF No. 118, at 4–5.) The CDC states that obese people have a BMI of 30.0 or higher. *Defining Adult Overweight and Obesity*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/obesity/basics/adult-

17

defining.html (last visited Apr. 17, 2024). Therefore, Mr. Walker appropriately concedes that he is only overweight, not obese. (ECF No. 118, at 5.) Although Mr. Walker may have gained weight since his last height and weight measurement, a BMI greater than 30.0 is not reflected by his medical records.

Additionally, his Motion, filed by his attorney, attempts to clarify that Mr. Walker suffers from hypertension, not just high blood pressure. (ECF No. 118, at 1.) However, Mr. Walker's medical records do not reflect either high blood pressure or hypertension. He has never been officially diagnosed with either, nor has he received any prescribed medications to manage the conditions. Considering the blood pressure readings available, Mr. Walker may suffer from undiagnosed hypertension, but it is yet unclear. Although two of his blood pressure readings are elevated, at 138/88 and 138/95 from March and December of 2021 respectively, a more recent reading from March of 2022 was only 123/84 which is close to a normal reading of 120/80. (ECF No. 118, at 2; ECF No. 125-2, at 3, 11.)

Regardless of whether Mr. Walker suffers from hypertension or not, the condition alone is not an "extraordinary and compelling" reason for release. *See* 18 U.S.C. § 3553(a). While hypertension and obesity were highlighted as risk factors early in the pandemic, "highly effective . . . vaccines dramatically affect whether an inmate's medical conditions constitute the 'extraordinary and compelling reason' required to further consider compassionate release." *United States v. Sanders*, No. SAG-06-087, 2021 WL 1428546, at *3 (D. Md. Apr. 15, 2021) (collecting cases). Mr. Walker received two COVID-19 vaccinations in 2021. (ECF No. 125-1, at 2.) Mr. Walker also previously had, and recovered from, COVID-19. (ECF No. 125-3, at 5–20.)

Finally, as of April 17, 2024, FCI Berlin has only one active COVID-19 cases among inmates and staff. *See BOP COVID-19 Statistics*, BUREAU OF PRISONS, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited Apr. 17, 2024). Clearly, FCI Berlin is not a "correctional facility affected or at imminent risk of being affected" by an ongoing outbreak of infectious disease. *See* U.S.S.G. § 1B1.13(b)(1)(D)(i).

The Court recognizes the grave health risks prisoners faced during the pandemic and commends nationwide efforts to promptly vaccinate prison staff and inmates. Fortunately, Mr. Walker has received at least two doses of COVID-19 vaccination and has previously had, and recovered from, COVID-19. (ECF No. 125-1, at 2; ECF No. 125-3, at 5–20.) But the April 10, 2023 resolution terminating the National Emergency, based on identified reduced COVID-19 trends, suggests that COVID 19—even while reappearing in variant form—no longer requires the drastic actions necessary during its peak.[17] The Department of Health and Human Services confirmed as much when it allowed the federal Public Health Emergency for COVID-19 to expire on May 11, 2023.[18] Considering the foregoing, the Court concludes that no medical condition on this record amounts to an extraordinary and compelling reason for Mr. Walker's immediate release from federal imprisonment due to risks from COVID-19.

## B.    Mr. Walker's Rehabilitative Efforts

Mr. Walker further contends that the Court should grant his motion for compassionate release because his "Psychology Department file [] will exemplify a tremendous degree of

---

[17] *See* H.R.J. Res. 7, 118th Cong. (2023), https://www.congress.gov/bill/118th-congress/house-joint-resolution/7 (last visited Apr. 17, 2024).

[18] *See COVID-19 Public Health Emergency*, U.S. DEP'T OF HEALTH & HUMAN SERVS., https://www.hhs.gov/coronavirus/covid-19-public-health-emergency/index.html#:~:text=Based%20on%20current%20COVID%2D19,day%20on%20May%2011%2C%202023 (last visited Apr. 17, 2024).

progress when compared to [his] behavior and/or attitude towards a life of crime." (ECF No. 114, at 10.) Mr. Walker informs the Court that he has successfully completed drug treatment, "the challenge program", "anger management class", and "serve safe manager class". (ECF No. 114, at 10–11.)

This Court commends Mr. Walker for his ongoing efforts to improve himself and prepare for life outside of prison. But Congress made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). "Prisoners are *supposed* to follow the rules, take classes, work at a job, and otherwise attempt to improve themselves. That a prisoner does so means that he has met baseline expectations, not that he has done something extraordinary." *United States v. Logan*, 532 F.Supp.3d 725, 735 (D. Minn. 2021) (emphasis in original).

### C.   Mr. Walker's 19 U.S.C. § 924(c) Stacking Assertion Does Not Constitute an "Extraordinary and Compelling" Reasons for a Reduction in Sentence

Finally, Mr. Walker argues that the 384-month sentence he originally received alone constitutes an "extraordinary and compelling reason[]" to reduce his sentence. (ECF No. 114, at 8–9 (citing *McCoy*, 981 F.3d at 286).) However, Mr. Walker fails to articulate how his reduced, 188-month sentence constitutes such a disparity that would be deemed "disproportionate to both 'the seriousness of the offense and to what Congress now deems appropriate for this kind of conduct.'" *McCoy*, 981 F.3d at 279 (quoting *United States v. Bryant*, No. 95-202-CCB-3, 2020 WL 2085471, at *5 (D. Md. Apr. 30, 2020)). "The *McCoy* court explicitly made clear that 'not *all* defendants convicted under § 924(c) should receive new sentences.'" *United States v. Guess*, 576 F. Supp. 3d 370, 374 (E.D. Va. 2021) (quoting *McCoy*, 981 F.3d at 287) (emphasis in original). Rather, it is up to the court to perform "individualized assessments of each defendant's

sentence" to determine whether extraordinary and compelling circumstances exist. *McCoy*, 981

F.3d at 286.

> [I]n *McCoy*, the Fourth Circuit highlighted the following factors when it affirmed the compassionate release of four defendants: (1) the defendants' "relative youth" . . . when the offenses were committed, (2) their lack of criminal history, (3) the time they had already served . . ., (4) the fact that § 924(c)'s mandatory minimums were the "lion's share" of their sentence lengths, and (5) their post-sentencing rehabilitation.

*Guess*, 576 F. Supp. 3d at 374 (citing *McCoy*, 981 F.3d at 277–79, 286). This list is not

exhaustive, but merely representative of some factors that may result in a finding of

extraordinary and compelling reasons to justify compassionate release.

Considering the specific circumstances of Mr. Walker's offense, his 188-month sentence

is appropriate. Mr. Walker was both an organizer and participant in three armed carjackings, and

one robbery, over the course of just four months. (*See* ECF No. 117 ¶¶ 11–25.) During each of

these offenses, Mr. Walker and his co-conspirators "robbed at gunpoint employees of [multiple]

businesses . . . and through the use of threatened force and violence, took property and money

belonging to the businesses against the will of the employees." (ECF No. 117 ¶ 9.) Through this

scheme, Mr. Walker and his co-conspirators obtained over $150,000. (ECF No. 117 ¶ 27.) Mr.

Walker inflicted real and meaningful harm to the individuals he robbed or threatened with a gun,

as well as from the businesses he stole from.

Furthermore, Mr. Walker was 35 years old at the time he committed these offenses. In

his adult life, he had eighteen prior infractions, including convictions for unlawful wounding,

assault and battery, obstruction of justice, and distribution of cocaine. (*See* ECF No. 117

¶¶ 38–56.) Therefore, he cannot rely on relative youth or lack of prior criminal history to

support relief.

Finally, this Court previously reduced Mr. Walker's sentence from 384-months to 188-months. If he were sentenced today, Mr. Walker would be subject to a mandatory minimum sentence of 168-months. This 20-month difference, when looking at the totality of the circumstances of Mr. Walker's offenses, is "not so drastic that it constitutes an extraordinary and compelling reason for relief." *Hinton*, 2022 WL 988372 at *5.

**D.**     **The 3553(a) Factors Do Not Support a Reduction in Mr. Walker's Sentence**

Although Mr. Walker did not satisfy the "extraordinary and compelling" reason for compassionate release, even if he had, the Court concludes that the § 3553(a) factors weigh against his release. This Court speaks to those factors in the interest of creating a full record. 18 U.S.C. § 3553(a).

Upon review, Mr. Walker's criminal history and underlying convictions demonstrate that he presents an ongoing threat to the public, as he repeatedly disregarded the law, and his conditions of release will not sufficiently assure the safety of the community at this time. Mr. Walker committed multiple drug offenses as an adult, drove repeatedly on a suspended license, and unlawfully wounded three individuals before the instant offense. (ECF No. 117 ¶¶ 38–56.) At the time he committed the underlying offense, he was still "under a criminal justice sentence for Possession of Cocaine with Intent to Distribute." (ECF No. 117 ¶ 58.) Thus, even when Mr. Walker was on supervision for parole, he was not deterred from committing criminal offenses and continued lengthening his criminal history. BOP identifies him as an inmate at a medium risk of recidivism. (ECF 119, at 2.) Thus, further reducing his criminal sentence likely would not deter him from committing future criminal acts.

In the underlying offense, Mr. Walker was convicted of two Counts of Brandishing of a Firearm in Furtherance of a Crime of Violence, a Hobbs Act Robbery. In both instances, Mr.

Walker held a victim at gunpoint and robbed them.  Not only did Mr. Walker participate in these crimes, but he helped organize them.  A co-conspirator would first alert Mr. Walker of a planned distributor's cigarette purchase date and location.  Then, Mr. Walker himself would enlist the aid of others and plan the armed robberies and carjackings.  As a key orchestrator of a multipart and well-planned robbery scheme, Mr. Walker had ample time to consider his actions and their consequences and, at 35 years of age, abandon any criminal conduct.  That was true before each of the forced armed criminal actions he undertook.  He chose instead to lead others in three carjackings and another armed robbery.  The nature and circumstances of this crime and the role Mr. Walker played in it weigh against any early release.

Furthermore, the Court carefully considered all of the § 3553(a) factors when it reduced Mr. Walker's sentence in 2021.  Nothing in this record commends any change from this prior assessment, and the Section 3553(a) factors continue to weigh against any further reduction. This reduction adjusted for "the kind[] of sentence and the sentencing range" now imposed for commission of the same offense.  18 U.S.C. § 3553(a)(4).  It even addressed "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(A)(6).

### V. Conclusion

For the reasons explained above, the Court will deny Walker's Petition for Reduction in Sentence and/or Compassionate Release, (ECF No. 114), and his Motion for Compassionate Release, (ECF No. 118).

An appropriate Order shall issue.

Date: 4|18|2024
Richmond, Virginia

M. Hannah Lauck
United States District Judge

23